Dear Mr. Green:
You requested the opinion of this office concerning the New Orleans Business and Industrial District (the "District"), which is a special municipal subdivision with all of the rights and powers of a political subdivision of the State of Louisiana (the "State") created pursuant to the authority of Chapter 12-A of Title 33, Section 4701 through 4708 of the Louisiana Revised Statues of 1950, as amended (the "Act"), in order to provide for the acquisition, construction, improvement, maintenance and operation, of special projects, additional municipal services, capital improvements, and facilities within the geographical boundaries of the District.
The District has received a proposal from one of its existing industrial tenants, Royce Instrument Corporation ("Royce"), to lease in its entirety a building owned by the District in order to expand Royce's business operations. The staff and Board of Commissioners of the District (the "Board") have negotiated lease terms for the lease of the building for an initial term of ten (10) years with two (2) five (5) year renewal options. Additionally, the terms of the negotiation require the District to provide Royce a loan of up to $250,000 to rehabilitate the leased building.
The Act provides that the District is a special municipal district which constitutes a body corporate in law, with all the powers of a corporation, and with all the powers and rights of a political subdivision of the State as provided by the constitution and laws of this State. The objectives and purposes of the District are to provide for the acquisition, construction, improvement, maintenance and operation, of special projects, additional municipal services, capital improvements, and facilities within the District. As set forth in R.S. 33:4703, the District is granted all powers necessary or convenient for the carrying out of such objects and purposes including, by way of illustration, but not limitation, the following:
 (1) To acquire, purchase, lease as lessee and hold and use any property, real, personal, or mixed, tangible or intangible, or any interest therein necessary or desirable for carrying out the purposes of the district, and to sell, lease as lessor, transfer, or dispose of any property or interest therein acquired by it.
 (2) To acquire by purchase, lease, or otherwise and to construct, improve, maintain, repair, and operate facilities which it deems necessary or convenient to carry out its purposes.
 (3) To enter into agreements of any nature with any person or persons, natural or artificial, corporation, association or other entity, including public corporations, political subdivisions, municipalities, the United States government and agencies thereof, or any combination thereof or with instrumentalities of every kind, for the operation of the district, including all or any part of the properties and facilities thereof.
 (4) To make and enter into contracts, conveyances, mortgages, deeds or trusts, bonds, and leases in the carrying out of its corporate objects.
 (5) To let contracts for the construction or acquisition in any other manner, except through the power of eminent domain, of property and facilities incident to the carrying out of the purpose or purposes of the district, which contracts shall be let in such manner as shall be determined by the board in conformance with law.
 (6) To fix, maintain, collect, and revise rates, charges, and rentals for the properties and facilities owned by the district and the services rendered by the district. (Emphasis added)
Nowhere is there found a specific exception to the Public Lease Law, R.S. 41:1211, et seq. The Public Lease Law defines "lessor" to mean "all . . . branches, departments or agencies of the state, or any . . . municipal or parochial subdivision of this state . . . or other unit or institution, deriving its authority and powers from the sovereignty of the state". It therefore appears that the Public Lease Law applies to the District.
You advised that the District is also familiar with R.S. 33:4717.2
which gives parishes, municipalities, industrial districts and other political subdivisions, which are permitted by law to own land, buildings, or other property for industrial inducement purposes, the power to lease buildings for industrial inducement purposes provided the notice and publication requirements set forth therein are met.
Your first question is: Should the District proceed with itsplanned lease transaction under the authority granted to it by theAct?
We decline to answer this question, as you are asking a policy question which most properly must be decided by the Board and not by this office.
Your second question is, if the answer to question 1 is yes, wouldthe lease then be subject to the State's Public Bid Laws andPublic Lease Laws?
As stated earlier, we can find no exception to the Public Lease Law in the Act. The Public Bid Laws, R.S. 38:2211, et seq., do not apply to the lease of property but rather to public works and the acquisition of materials and supplies.
Your third question is, Can or must the District proceed with itsplanned lease transaction under the authority granted pursuant toLA-R.S. 33:4717.2?
LA R.S. 33:4717.2 provides in pertinent part as follows:
 A. Except as provided for those parishes in Subsection E below, in addition to authority granted by other laws, any parish, municipality, industrial district, port, harbor and terminal district, or other political subdivision of the state, hereinafter referred to as "political subdivision," which is permitted by law to own land, buildings, or other property for industrial inducement purposes, shall have the authority to sell, lease, or otherwise dispose of, by suitable and appropriate contract, such transactions being hereinafter referred to as "transfers," to any enterprise locating or existing within, outside of, or adjoining to such political subdivision, all or any part of an industrial plant site, building, port, harbor, or terminal facility, or other property owned by the political subdivision. In determining the consideration for any transfer, the governing authority of the political subdivision may consider the potential value of the economic impact of the enterprise being induced to locate or expand within, outside of, or adjoining the political subdivision, as well as the value of the lands, buildings, or other properties involved. Prior to any transfer, the governing authority of the political subdivision shall give notice of its intention to do so, by publication of a notice of intention once a week for two consecutive weeks, beginning at least fourteen days from the date such action is contemplated. Such notice of intention shall include the following: (1) a general description of the proposed transfer, (2) a description of the property to be transferred, (3) the proposed consideration to be given in exchange for said property, (4) a statement that the proposed contract is on file for public inspection in the office of the political subdivision, (5) a statement as to the appraised value of such property as determined by a real estate appraisal made within the previous twelve months, and (6) a date, time, and place at which objections to such transfer will be received. Should five percent of the resident electors of the political subdivision object to said proposed transaction, an election shall be held for the purpose of submitting the question of the transfer to the voters in accordance with Chapter 6_B of Title 18 of the Louisiana Revised Statutes of 1950.
 B. The resolution or ordinance adopted by the governing authority authorizing any transfer of property of the political subdivision shall set forth, in a general way, the terms of the authorized transfer and that the contract is on file for public inspection in the office of the political subdivision. At the regularly scheduled meeting immediately prior to the meeting at which the resolution will be considered, the governing authority of the political subdivision shall announce to those persons present that the resolution will be considered at the next meeting. Such resolution or ordinance shall be published as soon as possible after adoption in one issue of the official journal of the political subdivision. For a period of thirty days from the date of publication of any such resolution or ordinance, any interested person may contest the legality of such resolution or ordinance or the validity of the authorized transfer, after which time, no one shall have any cause of action to contest the legality of the transfer for any cause whatsoever, and it shall be conclusively presumed thereafter that every legal requirement has been complied with, and no court shall have authority to inquire into such matters after the lapse of said thirty days.
 C. This Section shall not apply to property acquired from the proceeds of industrial development bonds issued in compliance with the provisions of laws authorized by Article 6, Section 21, of the Louisiana Constitution of 1974 or issued by industrial development boards in compliance with the provisions of Chapter 7 of Title 51 of the Louisiana Revised Statutes of 1950, as amended. In such instances, property may be leased, sold or otherwise disposed of in compliance with such laws. . . . (Emphasis added)
As the District is a political subdivision which is permitted by law to own land, buildings, or other property for industrial inducement purposes, it is authorized to lease property pursuant to the provisions of R.S. 33:4717.2.
Your fourth question is, If so, is the District correct inassuming that the lease so entered into would be exempt from theState's Public Bid Laws and Public Lease Laws (assuming compliancewith the notice and publication requirements set forth therein)?
Yes. La.R.S. 33:4717.2, in pertinent part, gives political subdivisions, permitted by law to own land for industrial inducement purposes, the authority to lease all or part of an industrial plant site, building, port, harbor, or terminal facility, or other property owned by the political subdivision, to any enterprise locating or existing within the municipality. The statute further provides that the governing authority of the municipality may consider the potential value of the economic impact of the enterprise being induced to locate or expand within the municipality, as well as the value of the property involved, in determining the consideration of the transfer. The provision for weighing the potential value of the economic impact of the transaction and the reference to an enterprise being induced to locate or expand in the political subdivision necessarily demonstrates that the statute contemplates a negotiated transaction, rather than a bidding situation. Moreover, the authority granted by La.R.S. 33:4717.2 is ". . . in addition to the authority granted by other laws." That language has been found to render the public bid laws and public lease laws inapplicable. SeeJTS Realty Corp v. City of Baton Rouge, 499 So.2d 274 (La.App. 1st Cir. 1986), writ denied, 503 So.2d 19 (La. 1987).
Your fifth and final question is, Would the loan of $250,000 bythe District to Royce to be used to rehabilitate the leasedbuilding violate the provisions of Article VII, Section 14 of theState Constitution?
Yes. La. Const. Art. VII, Sec. 14(A) prohibits the "funds, credit, property, or things of value" of the state and its political subdivisions from being "loaned, pledged or donated to or for any person, association, or corporation, public or private". Although this constitutional provision also provides certain exceptions to this rule, those exceptions do not apply to the contemplated transaction. See Op.Atty.Gen. 96-163.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ___________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH